**Robert L. GUMM, Individually and as Officer and Director in Desert Aire Mobile Home Styling & Sales, Inc., Appellant,**

v.

**Frank OWEN, III, Individually and as Frank Owen Associates, Appellee.**

**No. 08–90–00191–CV.**

Court of Appeals of Texas, El Paso.

July 3, 1991.

Doris Sipes, El Paso, for appellant.

Jim Curtis, Kemp, Smith, Duncan & Hammond, Brenda J. Norton, Herbert Ehrlich, Herbert Ehrlich, P.C., David A. Simmental, El Paso, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a jury trial, the court granted Appellee a directed verdict on all causes of action asserted against him on the basis that the statute of limitations had run. By a single point of error, Appellant complains that the court erred in granting the directed verdict because there is a fact issue regarding the application of the discovery rule to the causes of action for legal malpractice and fraud. We affirm.

The suit arose out of an alleged business venture involving Robert L. Gumm (Gumm), Appellant, and Frank Owen, III, (Owen), Appellee. Owen is a well-known attorney in El Paso. Gumm is a business man with a high school education. Also involved is Owen's wife, Marianne (Mrs. Owen). The testimony of Gumm and Owen reveal strikingly different accounts of the events leading up to the lawsuit.

According to Owen, in 1971, he held an interest in a mobile home business that employed Gumm. In December 1972, Owen and Gumm agreed to open their own mobile home business with Owen personally guaranteeing the financing and Gumm running the business. Owen claims that he and Gumm were to each own a one-half interest in the business, but Owen's interest was to be put in Mrs. Owen's name.

In 1973, the business was incorporated in the name of Desert–Aire Mobile Home Styling & Sales, Inc., with Owen taking care of the necessary legal work required to form the corporation. Owen, Mrs. Owen and Gumm were named as initial directors and were to serve until their successors were elected at a meeting of the shareholders. Owen and Gumm agreed that they would withdraw equal amounts of money from the business and in fact, Owen or Mrs. Owen received monthly payments, usually $1,500.00 each, from the corporation from 1974 to 1979, with the checks designated as "draw" or "advance" except for the last two which were marked "legal fees". The payments were discontinued in 1979 because Gumm indicated that he was having a hard time. They were never resumed. Although denied by Gumm,

Owen's evidence indicated that starting in 1978, he repeatedly made requests on Gumm to furnish financial statements and an accounting so that he could tell how the business was doing, requests that went unrequited.

Gumm denied ever having a business relationship with Owen before Desert–Aire was formed. He testified that he intended to be the sole shareholder and that his position has always been that he owned 100 percent of the business. Other than as his attorney to incorporate the business, the purpose of Owen's involvement in the business was to acquire a group of investors. Owen was to become a shareholder only after the investment group was formed, a condition which never occurred. Gumm claimed that the payments made to Owen were to compensate him for his efforts to form the investment group and for legal fees.

Shortly after the business was incorporated, Gumm picked up the corporate charter at Owen's office and without notice to, or the presence of Owen or Mrs. Owen, held an organizational meeting at which he "resigned" them as directors and appointed his son, Robert L. Gumm Jr., and a part-time secretary as their replacements on the board. In 1974, Gumm acquired real property on Dyer Street in El Paso on which to operate the business, paying for the property out of corporate funds. Initially deeded to Gumm alone, he subsequently deeded an undivided one-half interest in the property to "Frank Owen, as Trustee." Owen claimed that the property was deeded to him as trustee for his wife while Gumm contended that he had delivered a deed signed by him in blank so that the property could be divided into two parcels both in his name and thus save some expenses connected with city water and sewer charges.

On March 21, 1988, Mrs. Owen sued Gumm for damages arising out of alleged breach of contract and fraud. After an initial general denial, Gumm subsequently filed a counterclaim against Mrs. Owen and Owen alleging Deceptive Trade Practices Act violations arising out of the attorney/client relationship between Gumm and Owen and malpractice for the work performed to incorporate and for his representation of the corporation in connection with four consumer lawsuits filed against Gumm and the corporation. Also alleged were causes of action for breach of contract, intentional and negligent infliction of emotional distress, fraud, breach of fiduciary duty and conspiracy to commit fraud. In February 1990, the court granted a partial summary judgment in favor of Owen on the malpractice claims involving the four consumer lawsuits, presumably on the basis that the statute of limitations had run, from which judgment no appeal has been taken. The remaining causes of action went to trial, the court at the close of evidence granting Owen's motion for directed verdict on all claims asserted by Gumm against him, on the basis that they were barred by limitations. A take nothing judgment was signed on March 23, 1990, and on April 5, 1990, Gumm's third-party action against Owen was severed allowing this appeal.

■■■ All causes of action and claims asserted by Gumm against Owen arose out of the same transaction and circumstances involving the formation of Desert–Aire Mobile Home Styling & Sales, Inc. in 1973. Gumm alleges in effect that Owen negligently, intentionally and as a part of a conspiracy to defraud Gumm, failed to follow Gumm's instructions to make him the sole owner of the corporation and failed to disclose that Owen and Mrs. Owen were retaining an undisclosed interest in the corporation and the real property acquired by Gumm in 1974. He alleges that as a proximate result of a number of acts and omissions, he is entitled to recover actual and punitive damages. With the possible exception of the fraud contentions, all of Gumm's causes of action and claims boil down to a cause of action for malpractice and as such are governed by the two-year statute of limitations. *Willis v. Maverick*, 760 S.W.2d 642 (Tex.1988); *Sledge v. Alsup*, 759 S.W.2d 1 (Tex.App.—El Paso 1988, no writ). The Supreme Court has recently held that actions for fraud are governed by the four-year statute of limitations. *Williams v. Khalaf*, 802 S.W.2d 651, 657

(Tex.1990). In cases involving legal malpractice and fraud, the discovery rule applies; that is, the statute of limitations does not begin to run until the plaintiff has discovered or should reasonably have discovered the material facts giving rise to the alleged damage sustained by him. *Willis*, 760 S.W.2d at 645; *Sledge*, 759 S.W.2d at 2.

When confronted with a motion for instructed verdict, the trial court must, without considering the credibility of the witnesses, accept as true all evidence and reasonable inferences therefrom which tends to support the adverse party's contention. If a fact issue is raised, the motion should be denied. *Do v. Huber, Formagus, Holstead and Guidry Insurance, Inc.*, 728 S.W.2d 852 (Tex.App.—Beaumont 1987, no writ); see 3 R. McDonald, Texas Civil Practice § 11.28.2 (1983). When the evidence of the adverse party who has the burden of proof is equally consistent with the truth or falsity of the asserted fact proposition, a fact issue is not raised. *South Texas Water Co. v. Bieri*, 247 S.W.2d 268 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.); 3 R. McDonald, § 11.28.2.

Although Gumm contends that he did not discover the alleged malpractice and fraud of Owen in forming the corporation and in claiming 50 percent stock ownership for his wife until he received a letter from an attorney representing Mrs. Owen in 1987, Gumm's own testimony shows otherwise. Gumm was aware in 1973 that Owen had not completed the formation of the corporation since he picked up the charter, purchased books, removed Owen and Mrs. Owen from the board without their knowledge and issued stock to himself. In 1975, Gumm testified in his New Mexico divorce suit that he was the owner of 50 percent of the Desert–Aire shares. Although he claimed Owen had nothing to do with the running of the corporation, he admitted that during the first year Owen had to cosign every corporate expense check over $100.00, that Owen signed corporate loan documents as secretary of Desert–Aire, that monthly corporate checks of $1,500.00 (and later $2,000.00), marked

as "draw," were paid to Owen or Mrs. Owen from 1974 until 1979, that his CPA treated the payments to Owen as officer's salary on the corporate tax return, that he furnished Owen with a set of "dealer plates" for his automobile, that he admitted to his lawyer in a deposition taken in connection with a consumer suit in 1977 that Mrs. Owen owned 50 percent of the Desert–Aire stock and that on several occasions in 1975, Owen guaranteed bank loans to the corporation, one for $75,000.00 and another for $200,000.00.

With respect to the Dyer Street property on which the business was located and Gumm's claim that Owen fraudulently inserted his own name as trustee on a deed to half of the property that Gumm had signed in blank, not only was the deed filed in the records in 1975, giving Gumm constructive notice of the alleged fraud; *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981); but Gumm admitted that he received annual tax bills on the property mailed to him at the Dyer Street address in care of "Frank Owen, TR." for fifteen years. "Constructive notice in law creates an irrebuttable presumption of actual notice." *Mooney*, 622 S.W.2d at 85.

Finally, Gumm admitted that he received a letter from Owen dated March 31, 1980 in connection with one of the consumer lawsuits which had named Gumm, Owen and Mrs. Owen as defendants in the mistaken belief Desert–Aire d/b/a Bob's Mobile Home Sales was a partnership. The letter in part read, "You were also supposed to have obtained dismissal of M.A. Owen and Frank Owen, III out of such lawsuit, since this is not a partnership operation, and *Desert–Aire Mobile Home Styling and Sales, Inc., is a corporation in which M.A. Owen owns 50% of the stock, and I have no actual interest in the corporation.*" (Emphasis added). Gumm had no evidence that either he or his attorney ever made any response to Owen's assertion.

We hold that the evidence, particularly Gumm's own admissions, establishes that Gumm knew or should have known in the exercise of reasonable diligence, sufficient facts to lead him to discover the alleged

negligent and fraudulent acts of Owen in connection with the formation of the corporation and the conveyance of the property by 1975. The malpractice causes of action were barred after 1977. Applying the four-year statute of limitations, Gumm's cause of action for fraud was barred by 1979.

Judgment of the trial court is affirmed.